105 So.2d 98

**STATE of Alabama**

**v.**

**HOTZ GMC TRUCKS, INC.**

**1 Div. 744.**

Supreme Court of Alabama.

Sept. 11, 1958.

John Patterson, Atty. Gen., Willard W. Livingston and Wm. H. Burton, Asst. Attys. Gen., for appellant.

W. Dewitt Reams, Pillans, Reams, Tappan, Wood & Roberts, Mobile, for appellee.

Harvey Deramus and Deramus, Fitts, Johnston & Mullins, Birmingham, amici curiæ.

GOODWYN, Justice.

On January 25, 1956, the State Department of Revenue made a final assessment against Hotz GMC Trucks, Inc., a corporation, having its principal place of business in Mobile County, Alabama, for mileage tax claimed to be due under Act No. 664, appvd. July 5, 1940, Gen.Acts 1939, p. 1050 (Code 1940, Tit. 48, Art. 4, §§ 301(33) through 301(51), Cum.Pocket Part), for the period Sept. 9, 1955, through Oct. 31, 1955, in the amount of $292.33, the said sum including the tax, penalty and interest. Hotz appealed to the circuit court of Mobile County, in equity, where the trial court, after taking testimony ore tenus, set aside and cancelled the assessment. The State brings this appeal from that decree.

We are concerned here with §§ 1 and 2 of Act No. 664 (§§ 301(33) and 301(34), Tit. 48, Code 1940, Cum.Pocket Part), supra, which provide, in pertinent part, as follows:

"Section 1. The following words, terms and phrases when used in this act shall have meanings ascribed to them in this section except where the context clearly indicates a different meaning. * * * (2) *Motor carrier means any person,* firm, partnership, association, joint stock company, *corporation, lessee,* trustee, or receiver appointed by any court *controlling, operating or managing any motor vehicle used for the transporation of* persons or *property for hire.* * * *

"Section 2. That every *motor carrier* traversing the highways of the State subject to the provisions of an Act known as the Alabama Motor Carrier Act of 1939 *shall pay* to the State of Alabama into the fund of the State Department of Revenue as contribution to the maintenance, repair and policing of its public highways for each mile actually operated within the State on such public highways, whether such vehicle is loaded or empty, * * *. * * * *a mileage tax* of one-fourth (¼) cent per mile, per axle, *on all vehicles transporting property for hire.* * * *" [Emphasis supplied.]

The question presented is whether Hotz, as lessor of vehicles to Bemis Bros. Bag Company under the circumstances of this case, is liable for the mileage tax prescribed by the foregoing provisions of Act No. 664. We agree with the trial court's holding that it is not.

During the assessment period Hotz had six tractors and seven trailers under lease to Bemis, each of which was covered by a separate lease. It seems to us that the evidence clearly shows that Bemis had exclusive control of the operation and management of all the vehicles at all times during the assessment period. Bemis loaded

them with its own property exclusively, operated them with its own drivers, supplied its own motor fuel, carried public liability insurance on its drivers and itself, and carried its own cargo damage insurance. It sent the vehicles where it pleased, when it pleased and how it pleased. Hotz had no voice in determining any of these factors. The drivers were employees of Bemis and were, in all respects, in the same status as Bemis' other factory employees, except that they were paid on a mileage rather than on an hourly basis. They belonged to the plant employees' union, had the same vacation, holiday, insurance, seniority and other benefits accorded other employees.

Bemis paid Hotz as rental the sum of four cents per mile for each trailer. The eight cents per mile for each tractor and rental was paid whether the vehicles were loaded, empty or overloaded, and whether operated on or off the public highways. There is no indication that the rental was to be computed on the basis of a reasonable compensation for the amount of Bemis' property transported. Hotz maintained the vehicles in running order, kept fire, theft and collision insurance coverage in force on them and also bought the license tags for them.

Hotz' primary business was the selling and servicing of GMC trucks and related equipment. The leasing of the trucks and trailers to Bemis was a sideline. (However, there is evidence tending to prove that Hotz leased or loaned trucks to Stone Container Corporation from time to time for "special runs". Whether any mileage tax is due in connection therewith is not here involved.) The leases with Bemis contained a provision giving it an option to purchase the vehicles.

There appears to be ample evidence supporting the finding of the trial court that the leases between Hotz and Bemis were "not in any wise a subterfuge, but a bona fide business arrangement, entered into for a legitimate purpose," and that Hotz was not "controlling, operating or managing, during the time complained of, motor vehicles transporting property for compensation in this state, nor was it in any wise conducting a hauling operation whereby it became subject to the mileage tax."

We have held that the Mileage Tax Act of 1939 (Act No. 664, supra) "is an independent act dealing with taxation and distinct from the Alabama Motor Carrier Act, Art. 3, §§ 301(1) to 301(32), Title 48, Code 1940, as amended, and is separately administered. * * * [T]he tax act itself fixes the status of the taxpayer * * *." Griffin v. Edwards, 260 Ala. 12, 16, 68 So.2d 705, 708.

■■ A motor carrier, as defined in § 1 of Act No. 664, supra, is required to pay the mileage tax prescribed by § 2 of said Act only if such motor carrier is "traversing the highways of the State subject to the provisions of" an Act known as the Alabama Motor Carrier Act of 1939 (Act No. 669, appvd. July 5, 1940, Gen.Acts 1939, p. 1064, as amended; Code 1940, Tit. 48, Art. 3, §§ 301(1) to 301(32)). But, in the instant case we do not get to any question as to whether Hotz is subject to the provisions of the Motor Carrier Act for the simple reason that Hotz is not, in our view, a motor carrier within the meaning of that term as defined in the Mileage Tax Act (Act No. 664, supra). For one to be liable for the mileage tax the following three conditions must exist, viz.: (1) In the first place, he must be a motor carrier, as that term is defined in the Mileage Tax Act, that is, he must *control, operate* or *manage* a motor vehicle used for the transportation of persons or property for hire. (2) If it be determined that he is a motor carrier as so defined, he must, as such carrier, be traversing the highways of the state. (3) He must be subject to the provisions of the Motor Carrier Act. In the case before us we do not get beyond the first requirement. We are in accord with the trial court's finding that Hotz, in maintaining the vehicles, procuring the license tags for them, and keeping them insured against fire, theft and collision, was not

"controlling, operating or managing" them, and hence is not liable for the mileage tax assessed against it.

Whether the State can levy a tax on the business of leasing vehicles for use by the lessee in transporting the lessee's own property is not a question now before us. And whether it is desirable that such business be taxed is a matter which addresses itself to the legislature. We do not think the Mileage Tax Act, as presently written, was intended, under the facts and circumstances of this case, to apply to Hotz.

The decree appealed from is due to be affirmed.

Affirmed.

LIVINGSTON, C. J., and LAWSON, SIMPSON and MERRILL, JJ., concur.